HILGERS GRABEN PLLC
Michael Merriman, California Bar No. 234663
mmerriman@hilgersgraben.com
Luke Landers, California Bar No. 315475
llanders@hilgersgraben.com
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 369-6232
Facsimile: (402) 413-1880

Attorneys for PLAINTIFF PETER BEAUDRY
AND THE PROPOSED CLASS

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| PETER BEAUDRY, on behalf of himself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>The NOCO Company,<br><br>Defendant. | Case No.: 4:25-CV-01467-JST<br><br>**AMENDED COMPLAINT FOR VIOLATIONS; AND DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION** |

Plaintiff Peter Beaudry ("Plaintiff"), on behalf of himself and all others similarly situated, brings this action against Defendant the NOCO Company ("NOCO"). Plaintiff, on behalf of himself and similarly situated persons, demands a trial by jury on all counts for which a right to trial by jury is allowed and, in support of this Complaint, alleges as follows:

**NATURE OF THE ACTION**

1. This class action for damages and equitable relief arises from false claims made by NOCO about the efficacy of its family of products, the NOCO Boost jump-starters ("the NOCO Boost Products"). These false claims led Class Members to purchase defective products that did not perform as advertised and be injured as a result.

2. NOCO's advertisement of the NOCO Boost Products heavily featured claims of its reliability, longevity, and safety.

3. Because the NOCO Boost Products did not perform as advertised, consumers who purchased them were damaged by, at the very least, the diminution in value from the purchased device not operating as it claims to.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff is an individual who is domiciled in and is a citizen of Sonoma County, California.

5. Defendant NOCO is a foreign corporation with its principal place of business in Cleveland, Ohio.

6. This is an action arising under California law. Accordingly, jurisdiction for this claim is conferred to this Court pursuant to, inter alia, 28 U.S.C. §§ 1332, 1441.

7. Venue is proper under 28 U.S.C. § 1441 because this action arises from the provision of goods intended primarily for personal use, and the buyer of these services—Plaintiff—resides in Sonoma County.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8. The NOCO Company is an American company that designs and creates consumer battery chargers, jump starters, batteries, and a wide range of accessories.

9. NOCO offers a variety of portable vehicle battery jump start apparatuses.

10. Of its products, NOCO offers a portable lithium battery jump starter pack named "NOCO Boost." NOCO offers at least five different variations of the NOCO Boost Products: the NOCO Boost Sport (GB20), the NOCO Boost Plus (GB40), the NOCO Boost XL (GB50), the NOCO Boost HD (GB70), and the NOCO Boost Pro (GB150). These are all different variations of the same product having different capacities.

1        11.     NOCO describes the NOCO Boost Products as follows: "Ultra-compact, yet powerful with the power of lithium technology. Pound for pound, lithium provides extreme energy output at a fraction of the size. And coupled with high-end electronics and design, it produces safe and efficient performance."[1] NOCO further describes the NOCO Boost Products as "easy to use" and details just four simple steps to successfully using the products.[2]

         12.     NOCO further repeats the claim of efficiency and safety throughout its various versions of the NOCO Boost Products. For example, NOCO describes its GB40 Boost Plus product as an "ultra-safe and *mistake-proof* design with spark-proof technology and reverse polarity protection, which allow it to safely connect to any battery."[3]



         13.     The GB40 Boost Plus is currently listed on NOCO's website for $99.95. On Amazon, the product is also listed for $99.95. The other NOCO models are the GB20, the GB50, the GB70 and the GB150. These models are all available for sale on NOCO's website and on Amazon, ranging in price from $79.95 for the GB20 to $299.95 for GB150. These products are all different power variations of the same product.

---

[1] *NOCO Boost*, NOCO, https://no.co/products/power (last visited December 10, 2024).
[2] *NOCO Boost Plus GB150 3000A UltraSafe Car Battery Jump Starter, 12V Battery Pack, Battery Booster, Jump Box, Portable Charger and Jumper Cables for 9.0L Gasoline and 370L Diesel Engines*, AMAZON, https://www.amazon.com/NOCO-GB150-UltraSafe-Lithium-Gasoline
[3] *NOCO GB40 Boost Plus*, https://no.co/gb40 (last visited December 10, 2024).

14. The product's description on NOCO's Amazon listing also boasts about the GB40's efficient ability to start dead batteries: "Start Dead Batteries – Safely jump start a dead battery in seconds with this compact, yet powerful, 1000-amp lithium battery jump starter – up to 20 jump starts on a single charge – and rated for gasoline engines up to 6.0-liters and diesel engines up to 3.0-liters. UltraSafe – Safe and easy-to-use car jumper starter and jump pack without worrying about incorrect connections or sparks. Safely connect to any 12-volt vehicle with our *mistake-proof design* featuring spark-proof technology and reverse polarity protection."[4]

15. The Amazon listing repeats similar claims elsewhere on the page, noting that the product's main purpose is to "start dead batteries" and that it is "ultra-safe" with a "mistake-proof design." Furthermore, in its product description, the GB40 is said to "safely jump start a dead battery in seconds – up to 20 times on a single charge."[5]

16. The product description on NOCO's Amazon listing boasts about the GB150's ability to safely start dead batteries in seconds, stating: "The NOCO Boost GB150 is a compact yet powerful 3000-amp lithium jump starter designed to safely jump start a dead car battery in seconds—perfect for cars, trucks, motorcycles, ATVs, boats, SUVs, vans, and more. This portable car battery jump starter delivers up to 80 jump starts on a single charge and is rated for gasoline engines up to 9.0 liters and diesel engines up to 7.0 liters. Engineered with UltraSafe Technology, it features spark-proof connections and reverse polarity protection, making it a safe and mistake-proof car battery booster for any 12-volt vehicle."[6]

17. The NOCO Boost Products are the "#1 Best Seller in Jump Starters" on Amazon with over 99,000 ratings. For example, in April 2024, over 20,000 individuals bought the NOCO

---

[4] *NOCO Boost Plus GB40 1000A UltraSafe Car Battery Jump Starter, 12V Battery Pack, Battery Booster, Jump Box, Portable Charger and Jumper Cables for 6.0L Gasoline and 3.0L Diesel Engines, Gray*, AMAZON, https://www.amazon.com/NOCO-GB40-UltraSafe-Lithium-Starter/dp/B015TKUPIC/ref=cm_cr_arp_d_product_top?ie=UTF8 (last visited December 10, 2024) (emphasis added).
[5] *Id.*
[6] *NOCO Boost GB150: 3000A UltraSafe Jump Starter – 12V Lithium Battery Booster Pack, Portable Jump Box, Power Bank & Jumper Cables - for 9.0L Gas and 7.0L Diesel Engines*, AMAZON, https://www.amazon.com/Battery-Accessories-Gb150-Boost-Starter/dp/B015TKSSB8?ref_=ast_sto_dp (last visited July 28, 2025).

Boost Products within the last month. The NOCO Boost Products have been sold on Amazon since at least 2010.

18. Upon information and belief, NOCO is a registered brand with Amazon and is responsible for the advertising and information regarding the NOCO Boost products appearing on Amazon's website.

19. The "NOCO Store" appears on Amazon's website. This brand store uses NOCO's logo and branding and provides links to several different NOCO product lines and product listings on Amazon including the NOCO Boost products.[7]

20. Upon information and belief, NOCO had to verify its ownership of its trademarks to create its NOCO Store on Amazon's website in conformity with the following requirements listed on Amazon's website which state: "In order to be eligible for Brand Store creation, brands are required to enroll in the Amazon Brand Registry.

To enroll in the Amazon Brand Registry, you need:

- An active registered trademark for your brand that appears on your products or packaging
- The ability to verify yourself as the rights owner for the trademark
- An Amazon Brand Registry account, which you can create by simply signing in with your existing vendor or seller Amazon account credentials."[8]

21. The Amazon Brand Registry allows brands like NOCO to "manage the accuracy of product listings."[9]

22. The Amazon product listing for the GB150 includes images of the NOCO logo and other images of the GB150 that appear identical to those used on NOCO's website. For example,

---

[7] NOCO, AMAZON, https://www.amazon.com/stores/page/7428E5DB-99DF-42C9-8687-789F696FFDF3?ingress=2&lp_context_asin=B015TKSSB8&visitId=386b60f5-0246-4a55-8559-f550eaf93907&store_ref=bl_ast_dp_brandLogo_sto&ref_=ast_bln (last visited July 28, 2025).
[8] *Guide, Getting started with Brand Stores*, AMAZON ADS, https://advertising.amazon.com/library/guides/getting-started-with-stores (last visited July 28, 2025).
[9] *What is Amazon Brand Registry and how does it work?*, AMAZON, https://sell.amazon.com/blog/what-is-amazon-brand-registry (last visited July 28, 2025).

the image below to the left is from the GB150 Amazon listing,[10] and the image below to the right is from NOCO's website regarding the GB150:[11]




23. On NOCO's Amazon webpage for the GB150, there are four videos uploaded for the product which all appear to be uploaded by "NOCO – US," as seen in the below screenshot:[12]



---

[10] *NOCO Boost GB150: 3000A UltraSafe Jump Starter – 12V Lithium Battery Booster Pack, Portable Jump Box, Power Bank & Jumper Cables - for 9.0L Gas and 7.0L Diesel Engines*, AMAZON, https://www.amazon.com/Battery-Accessories-Gb150-Boost-Starter/dp/B015TKSSB8?ref_=ast_sto_dp (last visited July 28, 2025).
[11] *GB150 3000A 12V Boost PRO UltraSafe Jump Starter*, NOCO, https://no.co/gb150 (last visited July 28, 2025).
[12] *NOCO Boost GB150: 3000A UltraSafe Jump Starter – 12V Lithium Battery Booster Pack,*

24. Upon information and belief, Plaintiff alleges that NOCO is responsible for the information on the Amazon product listings for the NOCO Boost products.

25. The NOCO Boost Products are also sold through other retailers.

26. NOCO provides a 1-year express warranty with the NOCO Boost Products.

27. NOCO's claims of safety, reliability, and ease-of-use led customers to pay a higher price than they would have for other comparable products on the market.

28. A significant component of this safety, reliability, and ease-of-use is based on the simplified jumping procedure depicted above, which requires the NOCO Boost Products to automatically sense when connected to a battery. According to their instruction manual, the NOCO Boost Products will purportedly automatically sense when the device is connected to a battery with 2 or more volts remaining of power.

29. Upon information and belief, the NOCO Boost Products do not sense a battery with 2 volts remaining. Instead, the NOCO Boost Products require a higher voltage threshold for the NOCO Boost Products to sense the battery. If the NOCO Boost Products do not detect the presence of the battery, they will not jump the battery automatically. This defect is present in all the NOCO Boost Products.

30. This defect diminishes the ease-of-use of the NOCO Boost Products and their corresponding value.

31. Customers who purchased the NOCO Boost Products found that their devices were not as reliable as advertised by NOCO.

32. Customers noted that the NOCO Boost Products would not jump start their vehicle battery, despite their having fully charged their device.

33. For example, one Amazon customer wrote the following review on August 29, 2023: "Bought the GB40 boost for emergency needs – like everyone else. A couple times a year, I'd take it out of my vehicle trunk and recharge but it really held the charge so didn't need much top-up

---

*Portable Jump Box, Power Bank & Jumper Cables - for 9.0L Gas and 7.0L Diesel Engines*, AMAZON, https://www.amazon.com/Battery-Accessories-Gb150-Boost-Starter/dp/B015TKSSB8?ref_=ast_sto_dp (last visited July 28, 2025).

each time. The first time I needed it was about 4 years after purchase. The GB40 would not start my Honda CR-v (2.4 L engine) even though it was rated for vehicles up to 6.0 L engine size. A call to roadside assistance and got my jump start from the parking lot at the airport. About a week later, I needed another jump, but likely this time the vehicle was in my garage. The GB40 again failed to start my CR-V again…In the ensuing couple of weeks I needed to get more jump starts and each time the GB40 failed… Bottom line, the GB40 didn't perform as expected on a vehicle within the rated capacity of the GB40. Since the GB40 is out of warranty, I'm left holding the bag."[13]

34. Another customer wrote on August 27, 2022: "After a frustrating experience trying to get a jump for my car, I bought this so I'd never have to rely on anyone to get a jump start. So far it has failed me nearly every time I needed it… The last time I tried to use it, it was fully charged and it was summer, so no cold-battery excuse. I tried multiple times (and it was definitely hooked up correctly). Thankfully I had jumper cables and I found a friend to help me jump start my battery… I suppose I should just sign up for AAA. I am so not impressed with this product. I didn't buy it to have a fancy phone charger, I bought it to help me when my battery is dead!"[14]

35. Based on these and other negative reviews on Amazon and through reviews on other retail outlets, NOCO was aware of the flaws in the NOCO Boost Products, yet continued to advertise them as reliable and "mistake-proof." On information and belief, NOCO was aware of the flaws in the NOCO Boost Products at least as early as the first reviews.

36. On information and belief, the frequency of returns for the NOCO Boost Products and the reasons customers gave for returning the NOCO Boost Products also placed NOCO on notice of the flaws in the NOCO Boost Products. Yet, it continued to advertise the NOCO Boost Products as safe, reliable, and easy to use.

---

[13] *Customer Review*, AMAZON (August 29, 2023) HTTPS://WWW.AMAZON.COM/NOCO-GB40-ULTRASAFE-LITHIUM-STARTER/PRODUCT-REVIEWS/B015TKUPIC/REF=CM_CR_ARP_D_VIEWOPT_SR?IE=UTF8&REVIEWERTYPE=ALL_REVIEWS&FILTERBYSTAR=ONE_STAR&PAGENUMBER=1 (last visited April 10, 2024).

[14] *Customer Review*, AMAZON (August 27, 2022) HTTPS://WWW.AMAZON.COM/NOCO-GB40-ULTRASAFE-LITHIUM-STARTER/PRODUCT-REVIEWS/B015TKUPIC/REF=CM_CR_ARP_D_VIEWOPT_SR?IE=UTF8&REVIEWERTYPE=ALL_REVIEWS&FILTERBYSTAR=ONE_STAR&PAGENUMBER=1 (last visited April 10, 2024).

37. Because of how the NOCO Boost Products are intended to be used for emergencies and unpredictable situations, ease-of-use is essential to customers.

38. Because the NOCO Boost Products are not as easy to use as advertised, they pose risks of injury to users, most of whom are those needing to use the products in emergencies.

39. Plaintiff purchased his NOCO Boost Product, a GB150, through Amazon on August 5, 2024.

40. Plaintiff purchased his NOCO Boost Product new, not second-hand or used.

41. Before purchasing his NOCO Boost Product, he reviewed the Amazon description and product details to ensure it was suited to his needs. He noticed the various descriptions of the NOCO Boost Product as "ultrasafe," "mistake-proof," and its ability to "start dead batteries," and he also noticed the representation that his NOCO Boost Product could jump start a boat, which was the purpose for which Plaintiff intended to use his NOCO Boost Product.

42. Plaintiff purchased his NOCO Boost Product in California, and it was delivered to his California home.

43. Shortly after receiving his NOCO Boost Product, the Plaintiff needed to jump-start his boat battery. Though the battery was fully charged and the Plaintiff followed all instructions for using his NOCO Boost Product, his NOCO Boost Product failed to jump-start the boat.

44. Because his NOCO Boost Product failed to jump-start Plaintiff's boat, Plaintiff needed to borrow a friend's portable jump starter, which was a different brand. That jump starter was successfully able to jump-start the boat.

45. Plaintiff used his NOCO Boost Product only as directed and for its intended purpose.

## CLASS ACTION ALLEGATIONS

46. Plaintiff brings this lawsuit as a class action pursuant to Fed. Rules Civ. Proc. R 23.

47. **Class Definition.** The Class consists of and is defined as all California citizens, including Plaintiff, who (a) on or after December 27, 2020, (b) purchased any of the power variations of the NOCO Boost Products, and (c) suffered damages because of the NOCO Boost Products not being fit for their intended purpose. All Class Members will have encountered the

claims that the NOCO Boost Products are reliable and easy to use, because these are key features of NOCO's advertising of the NOCO Boost Products.

48. Plaintiff reserves the right to amend this definition as discovery proceeds and to conform to the evidence.

49. Excluded from the Class are NOCO, its agents, representatives, and employees; any judge to whom this action is assigned; and any member of that judge's staff and immediate family.

50. While the exact numbers of the Class are unknown at this time, Plaintiff submits that, upon information and belief, thousands of individuals throughout California are potential members of the Class. Because the Class Members are so numerous, individual joinder of these members is impractical. Further, the disposition of the Class's claims in a single action will provide substantial benefits to all parties and the Court.

51. Plaintiff further alleges the Class Members will be ascertainable through NOCO's electronic records, data, and databases.

52. Plaintiff shares common questions of law and/or fact with each Class Member. The common questions of law and/or fact include, but are not limited to, the following:

    a. whether NOCO's false statements induced consumers to purchase the NOCO Boost Products;

    b. whether NOCO's conduct damaged consumers; and

    c. the appropriate nature of class-wide injunctive or other equitable relief.

53. The common questions of law and/or fact predominate over questions that may affect only individual members.

54. A class action will cause an orderly and expeditious administration of claims by the Class Members. Economies of time, effort, and expenses will be fostered, and uniformity of decisions will be ensured.

55. Plaintiff's claims are typical of the claims of the Class since they are based on and arise out of identical facts constituting the wrongful conduct of NOCO.

56. Plaintiff is a Class Member. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of other Class Members, and he will fairly

1 and adequately protect their interests. Additionally, Plaintiff is aware of his responsibility as a class representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Class counsel has extensive experience in class action litigation.

57. There is no plain, speedy, or adequate remedy other than by maintenance of this class action since Plaintiff is informed and believes that the damage to each Plaintiff is relatively small, making it economically unfeasible to pursue remedies via means other than a class action. Consequently, there would be a failure of justice but for the maintenance of the present class action.

58. The Class Members have suffered the same actual damages, losses, and harms as those sustained by Plaintiff, including statutory damages.

59. Plaintiff's causes of action against NOCO may be maintained as a class action pursuant to Fed. Rules Civ. Proc. R 23 because there are common questions of law or fact common to the class, there are thousands of Class Members so joinder of all members is impracticable, the Class Members are readily ascertainable, the claims or defenses of the representative party are typical of the claims or defenses of the class, and the representative party will fairly and adequately protect the interests of the class.

<u>**COUNT I**</u>

<u>**BREACH OF IMPLIED WARRANTY OF FITNESS**</u>

<u>**FOR A PARTICULAR PURPOSE**</u>

<u>**SONG-BEVERLY CONSUMER WARRANTY ACT**</u>

<u>**CAL. CIV. CODE § 1790 ET SEQ.**</u>

60. Plaintiff re-alleges and incorporates by reference paragraphs 1-59 as if fully set forth herein.

61. This claim is brought by Plaintiff individually and on behalf of the Class.

62. Class Members are consumers who purchased the NOCO Boost Products new, primarily for personal, family, or household purposes. Class Members did not use the NOCO Boost Products for business purposes.

63. Class Members purchased the NOCO Boost Products either directly from NOCO or from an authorized retailer. These transactions occurred in California.

64. Class Members purchased the NOCO Boost Products to start dead batteries for their vehicle or other machinery equipped with gas engines. Most often, Class Members sought out the NOCO Boost Products for their ease-of-use, reliability, longevity, and safety qualities because they intended to use the NOCO Boost Products in times of emergencies or unpredictable situations. As discussed in more detail above, NOCO specifically advertised the NOCO Boost Products as "mistake-proof," safe, and reliable. The claims of the NOCO Boost Products' safety are also repeated on the NOCO Boost Products' packaging.

65. Class Members discovered that the NOCO Boost Products were not as easy to use, reliable nor long-lasting as claimed immediately after use began or at least shortly after use began.

66. NOCO had reason to know that consumers of the NOCO Boost Products would use them for a particular purpose: as a "battery booster jump box for jump starting cars, boats, [and] motorcycles."[15]

67. NOCO is aware of the particular purpose of the NOCO Boost Products because it also manufactures and sells other products for other particular purposes, for example, products for different types of vehicles such as the "Boost MAX Series," which are designed to "jump start[] almost every type of vehicle and equipment, including semi-trucks, motorhomes, coaches, buses, mining, agricultural, construction, and vocational equipment."[16]

68. Since NOCO is a self-proclaimed manufacturer or premium consumer battery chargers, jump starters, and lithium batteries, and specifically sold the NOCO Boost Products as easy to use, reliable, and long-lasting, the Class Members relied on NOCO's skill and judgment in furnishing a robust, ultra-safe, easy to use, and reliable jump starter for use by individuals needing to jump start their dead battery.

69. NOCO had reason to know that Class Members would rely on their skill and judgment in furnishing a reliable and long-lasting jump starter for use in emergencies or unpredictable situations because it was advertised as such.

70. Plaintiff and Class Members were harmed.

---

[15] *Meet Boost*, NOCO, https://no.co/boost (last visited on July 28, 2025).
[16] *Id.*

71. The failure of the NOCO Boost Products to be suitable was the cause of the harm to Plaintiff and Class Members.

72. The NOCO Boost Products are, in fact, not fit for their intended use, and Plaintiff and all Class Members have suffered damages as a result of NOCO's breach of implied warranty.

73. As a result of NOCO's acts or omissions, Plaintiff and Class Members have sustained damage in the amount actually paid, plus prejudgment interest thereon at the legal rate.

74. As a further result of NOCO's actions, Plaintiff and Class Members have sustained incidental and consequential damages in an amount yet to be determined, plus interest at the legal rate.

75. As a further result of NOCO's actions, Plaintiff and Class Members have sustained damages equal to the difference between the value of the NOCO Boost Products as accepted and the value the NOCO Boost Products would have had if they had been as warranted.

76. As a direct result of NOCO's acts or omissions and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to the Song-Beverly Consumer Warranty Act, Plaintiff is entitled to recover his attorneys' fees based upon actual time expended and reasonably incurred in connection with the commencement and prosecution of this action.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## SONG-BEVERLY CONSUMER WARRANTY ACT

## CAL. CIV. CODE § 1790 ET SEQ.

77. Plaintiff re-alleges and incorporates by reference paragraphs 1-59 as if fully set forth herein.

78. This claim is brought by Plaintiff individually and on behalf of the Class.

79. Class Members are consumers who purchased the NOCO Boost Products new, primarily for personal, family, or household purposes. Class Members did not use the NOCO Boost Products for business purposes.

80. Class Members purchased the NOCO Boost Products either directly from NOCO or from an authorized retailer. These transactions occurred in California.

81. Pursuant to Cal. Civ. Cod. § 1792, the NOCO Boost Products were accompanied by an implied warranty of merchantability.

82. NOCO impliedly warranted that the NOCO Boost Products would pass without objection in the trade for the ordinary purpose for which they were intended. This includes that the NOCO Boost Products were adequately constructed or assembled and conformed to the promises or affirmation of fact made to Plaintiff and Class Members.

83. As evidenced by the defects and malfunctions alleged herein, the NOCO Boost Products were non-merchantable because they did not have the quality the buyer would reasonably expect. They would not pass without objection in the trade; namely, they were not adequately constructed or assembled and because they did not or could not conform to the promises or affirmations of fact made to Plaintiff and Class Members.

84. As a result of NOCO's acts or omissions, Plaintiff and Class Members have sustained damage in the amount actually paid, plus prejudgment interest thereon at the legal rate.

85. As a further result of NOCO's actions, Plaintiff and Class Members have sustained incidental and consequential damages in an amount yet to be determined, plus interest at the legal rate.

86. As a further result of NOCO's actions, Plaintiff and Class Members have sustained damages equal to the difference between the value of the NOCO Boost Products as accepted and the value the NOCO Boost Products would have had if they had been as warranted.

87. As a direct result of NOCO's acts or omissions and in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to the Song-Beverly Consumer Warranty Act, Plaintiff is entitled to recover his attorneys' fees based upon actual time expended and reasonably incurred in connection with the commencement and prosecution of this action.

### COUNT III

### VIOLATION OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE
### § 17500 ET SEQ. FOR FALSE AND MISLEADING ADVERTISING

88. Plaintiff re-alleges and incorporates by reference paragraphs 1-59 as if fully set forth herein.

89. This claim is brought by Plaintiff individually and on behalf of the Class.

90. Plaintiff and Class Members relied on NOCO's advertising claims that the NOCO Boost Products can "start a dead battery in seconds." This claim and others appeared in multiple places on NOCO's website listing, on NOCO's Amazon listing, and pages for the NOCO Boost Products on other retailers' websites. As discussed in more detail above, NOCO specifically advertised the NOCO Boost Products as able to "start dead batteries." This claim is repeated on the products' packaging.

91. NOCO's advertisements were likely to deceive or mislead consumers because the NOCO Boost Products do not, in fact, merely require following the four steps listed on NOCO's advertisements.

92. NOCO knew or should have known that the NOCO Boost Products do not automatically sense when they are connected to a battery, even if there are more than 2 volts of power remaining.

93. NOCO's advertisements did, in fact, mislead Plaintiff and Class Members, causing them to purchase the NOCO Boost Products even though the NOCO Boost Products were not adequate for the advertised purpose.

94. NOCO's advertisements caused Plaintiff and Class Members to purchase the NOCO Boost Products at a higher price than they would have paid for comparable products.

95. Plaintiff and Class Members suffered damages due to NOCO's false and misleading conduct, the nature and exact amount to be determined at trial. This damage includes monetary damages based on purchasing unusable products and damages through injuries caused by the NOCO Boost Products.

96. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff requests inadequate, Plaintiff and Class Members are entitled to equitable relief such as restitution and injunctive relief enjoining NOCO from continuing to engage in this false and misleading conduct.

## COUNT IV

## VIOLATION OF THE UNFAIR COMPETITION LAW

## CAL. BUS. & PROF. CODE § 17200, ET SEQ.

97. Plaintiff re-alleges and incorporates by reference paragraphs 1-59 as if fully set forth herein.

98. This claim is brought by Plaintiff individually and on behalf of the Class.

99. NOCO committed acts of unfair competition, as described above, in violation of the Unfair Competition Law ("UCL").

100. NOCO's conduct constitutes "unlawful" business practice within the meaning of the UCL. It includes, without limitation, False and Misleading Advertising in Violation of § 17500 et seq. of the California Business & Professions Code, violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1790 et seq., and negligent or fraudulent misrepresentation.

101. NOCO's conduct constitutes "unfair" business practices within the meaning of the UCL because, as described in the preceding paragraphs, NOCO's practices of making false representations about the performance, ease-of-use, durability, and safety of the NOCO Boost Products are unscrupulous, unethical, and substantially injurious to Plaintiff and Class Members, are not outweighed by any utility from the practices, and were not reasonably avoidable by Plaintiff and Class Members. Any purported benefit arising out of NOCO's conduct does not outweigh the harms caused to the victims of NOCO's conduct.

102. NOCO's conduct also constitutes an "unfair" business practice within the meaning of the UCL because it is and was contrary to California public policy and numerous legislatively declared policies, including the False and Misleading Advertising provisions in the California Business & Professions Codes and the Song-Beverly Consumer Warranty Act. NOCO's conduct contravenes the spirit and purpose of these statutes and further violates these laws, with an actual adverse impact on consumers.

103. NOCO's conduct further constitutes an "unfair" business practice within the meaning of the UCL because the gravity of the harm to Plaintiffs and Class Members far outweighs any purported utility of NOCO's conduct. The impact of NOCO's conduct on Plaintiffs and Class

Members far outweighs any purported reasons, justifications, and motives that NOCO had for making false advertisements and representations about the ease-of-use, reliability and longevity of the NOCO Boost Products. On information and belief, NOCO's only reason, justification, or motive for falsely representing the ease-of-use, reliability, or longevity of the NOCO Boost Products is to increase profits through additional sales and higher margins on sales. NOCO's desire for pecuniary gain from additional sales of the NOCO Boost Products is far outweighed by the impact of NOCO's conduct on Plaintiff and Class Members. NOCO's desire for additional profits does not justify making false or misleading representations about the NOCO Boost Products, especially those reflecting their actual ease-of-use, reliability, or longevity.

104. NOCO's conduct, as described above, also constitutes a "fraudulent" business practice violative of the UCL. As explained in the preceding paragraphs, NOCO's false statements about the NOCO Boost Products fraudulently present the impression that the NOCO Boost Products were adequately easy to use, reliable, and long-lasting to be used during emergencies or unpredictable situations. This conduct was designed to – and did – deceive consumers as to the true quality and value of the products they purchased.

105. NOCO knew or should have known that their false representations and conduct constituted unlawful, unfair, and fraudulent business practices that were likely to deceive a reasonable consumer.

106. Plaintiff and Class Members have suffered injuries, in fact, and have lost money as a result of each of NOCO's UCL violations in that they were deceived into purchasing the NOCO Boost Products, which were not adequately easy to use, reliable, or long-lasting for the purposes of Plaintiff and Class Members.

107. At a minimum, to the extent the Court ultimately deems the remedies at law that Plaintiff requests inadequate, Plaintiff and Class Members are entitled to equitable relief such as restitution and injunctive relief under Cal. Bus. And Pro. Code § 17203 enjoining NOCO from continuing to conduct business through unlawful, unfair, and fraudulent acts and practices.

## PRAYER FOR RELIEF

Named Plaintiff and the class request the following relief:

a. Certification of the Class;

b. A judgment against NOCO;

c. Actual damages suffered by Plaintiff and the Class;

d. The costs of suit, including reasonable attorney's fees and pre-judgment and post-judgment interest as provided by law;

e. Such other relief as the Court deems just and proper.

Date: July 30, 2025                                       Respectfully submitted,

/s/ *Michael Merriman*
Michael Merriman (SBN 234663)
Luke Landers (SBN 315475)
HILGERS GRABEN PLLC
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619.639.6232
mmerriman@hilgersgraben.com
llanders@hilgersgraben.com

*Attorneys for Plaintiff Peter Beaudry and the Proposed Class*

CLASS ACTION AMENDED COMPLAINT; DEMAND FOR JURY TRIAL
*Beaudry v. The NOCO Company,* Case No.: 4:25-CV-01467-JST

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues that can be tried to a jury.

Date: July 30, 2025                                     Respectfully submitted,


/s/ *Michael Merriman*
Michael Merriman (SBN 234663)
Luke Landers (SBN 315475)
HILGERS GRABEN PLLC
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619.639.6232
mmerriman@hilgersgraben.com
llanders@hilgersgraben.com

*Attorneys for Plaintiff Peter Beaudry and the Proposed Class*